UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION,                              )
STRYKER PUERTO RICO, LTD., and                   )
STRYKER SALES CORPORATION,                       )
                                                 )   Case No. 1:10cv1223
          Plaintiffs and Counter-Defendants,     )
                                                 )
v.                                               )   Hon. Robert J. Jonker
                                                 )   U.S. District Judge
ZIMMER INC., and                                 )
ZIMMER SURGICAL, INC.,                           )
                                                 )
          Defendants and Counter-Plaintiffs.     )
                                                 )

**PLAINTIFF STRYKER'S BRIEF IN SUPPORT OF ITS RENEWED
MOTION FOR TREBLE DAMAGES AND ATTORNEY'S FEES**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

        A.      Stryker's Invention............................................................................................3

        B.      Zimmer's Response to Stryker's Inventions.....................................................4

        C.      Stryker's Patents-In-Suit...................................................................................6

        D.      The District Court Litigation .............................................................................7

        E.      The Federal Circuit Appeal................................................................................9

        F.      The Supreme Court Appeal .............................................................................10

        G.      The Federal Circuit Remand ...........................................................................11

III.    AS  THIS  COURT  PREVIOUSLY  FOUND,  TREBLE  DAMAGES  ARE
        WARRANTED FOR ZIMMER'S EGREGIOUS WILLFUL INFRINGEMENT ..........12

        A.      *Read* Factor #1:  Zimmer Deliberately Copied Stryker's Patented Designs .........15

        B.      *Read* Factor #2:  Zimmer Failed To Investigate The Scope Of The Patents .........16

        C.      *Read* Factor #3:  Zimmer Engaged In Vexatious Litigation Conduct ..................17

        D.      *Read* Factor #4: Zimmer's Size Weighs In Favor Of Treble Damages................21

        E.      *Read* Factor #5: This Was Not A Close Case ........................................................22

        F.      *Read*  Factor  #6:  Zimmer's  More  Than  Decade-Long  Infringement
                Warrants Enhancement ....................................................................................23

        G.      *Read* Factor #7:  Zimmer Failed To Take Remedial Action ................................24

        H.      *Read* Factor #8: Zimmer Was Motivated To Harm Stryker .................................24

        I.      *Read* Factor #9:  Zimmer Attempted to Conceal its Misconduct .........................26

        J.      The *Read* Factors Weigh Heavily In Favor of Treble Damages...........................28

IV.     AS  THIS  COURT  PREVIOUSLY  FOUND,  THIS  CASE  IS  EXCEPTIONAL
        AND AN ATTORNEY'S FEE AWARD IS APPROPRIATE .........................................29

V.      CONCLUSION...................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
   No. 14-62369, 2016 U.S. Dist. LEXIS 107724 (S.D. Fla. July 27, 2016).............. 14, 15, 23, 24

*CleanCut, LLC v. Rug Dr., Inc.*,
   No. 08-836, 2013 U.S. Dist. LEXIS 16151 (D. Utah Feb. 4, 2013) ........................................ 23

*Comaper Corp. v. Antec, Inc.*,
   No. 05-1103, 2014 WL 12613394 (E.D. Pa. June 11, 2014).................................................. 30

*Dominion Resources Inc. v. Alstom Grid, Inc.*,
   No. 15-224, 2016 U.S. Dist. LEXIS 136728 (E.D. Pa. Oct. 3, 2016) ............................... 14, 25

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group*,
   No. 10-187, 2016 WL 2772123 (D. Neb. May 11, 2016)................................................... 17, 21

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   No. 13-366, 2016 WL 3346084 (E.D. Tex. June 16, 2016)................................................ 29, 30

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004)............................................................................................... 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)................................................................................................... passim

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   134 S. Ct. 1744 (2014)..................................................................................................... 1, 10

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   577 F. App'x 995 (Fed. Cir. 2014) ....................................................................................... 12

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   No. 03-1384, 2015 WL 6777377 (N.D. Tex. June 23, 2015) ................................................ 12

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010)........................................................................................ 17, 24

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
   No. 07-1200, 2010 WL 114005 (S.D. Cal. Jan. 6, 2010) ....................................................... 28

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
   No. 14-371, 2016 U.S. Dist. LEXIS 113307 (E.D. Tex. Aug. 24, 2016) ..................... 14, 15, 17

*Innovention Toys, LLC v. MGA Entm't, Inc.,*
   __ F. App'x __, 2016 WL 4151240 (Fed. Cir. Aug. 5, 2016) .................................................. 12

*Innovention Toys, LLC v. MGA Entm't,*
   No. 07-6510, slip op. at 4-8 (E.D. La. Mar, 8, 2017) ......................................................... passim

*Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.,*
   No. 04-5172, 2009 WL 512156 (D.N.J. Feb. 27, 2009) .................................................... 21, 28

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
   370 F.3d 1354 (Fed. Cir. 2004).......................................................................................... 22, 24

*NobelBiz, Inc. v. Global Connect, L.L.C.,*
   No. 6:12-CV-244 (E.D. Tex. Oct. 27, 2016) ................................................................ 14, 15, 17

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
   134 S. Ct. 1749 (2014)................................................................................................. 1, 2, 10, 29

*PACT XXP Techs., AG v. Xilinx, Inc.,*
   No. 07-563, 2013 WL 4801885 (E.D. Tex. Aug. 30, 2013) .................................................... 24

*Parker-Hannifin Corp. v. Wix Filtration Corp.,*
   No. 07-1374, 2011 WL 976559 (N.D. Ohio Mar. 17, 2011) ................................................... 26

*Powell v. Home Depot U.S.A., Inc.,*
   715 F. Supp. 2d 1285 (S.D. Fla. 2010) ................................................................................... 21

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC,*
   No.11-761, 2016 WL 6537977 (N.D.N.Y. Nov. 3, 2016)....................................... 14, 22, 23, 25

*Rawcar Group, LLC v. Grace Med., Inc.,*
   No. 13-1105, 2014 WL 12577590 (S.D. Cal. Dec. 16, 2014) ........................................... 29, 30

*Read Corp. v. Portec, Inc.,*
   970 F.2d 816 (Fed Cri. 1992)............................................................................................. passim

*ReedHycalog UK Ltd. v. Diamond Innovations, Inc.,*
   No. 08-325, 2010 U.S. Dist. LEXIS 83011 (E.D. Tex. Aug. 12, 2010) ............................ 21, 28

*St.-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.,*
   707 F. Supp. 2d 737 (N.D. Ohio 2010)................................................................................... 21

*Stryker Corp. v. Zimmer, Inc.,*
   782 F.3d 649 (Fed. Cir. 2014), *vacated and remanded*, 136 S. Ct. 1923 (2016) ...................... 9

*Stryker Corp. v. Zimmer, Inc.,*
   837 F.3d 1268 (Fed. Cir. 2016)......................................................................................... passim

*WBIP, LLC v. Kohler Co.*,
No. 11-10374, 2014 WL 585854 (D. Mass. Feb. 12, 2014), *aff'd* 829 F.3d 1317 (Fed. Cir. 2016) ........................................................................................................................ 15

*WBIP, LLC v. Kohler*,
829 F.3d 1317 (Fed. Cir. 2016)........................................................................... 14, 15

*WCM Indus., Inc. v. IPS Corp.*,
No. 13-2019, 2016 WL 2771790 (W.D. Tenn. May 12, 2016) ......................... 15, 17

**Statutes**

35 U.S.C. § 284 ........................................................................................................ passim

35 U.S.C. § 285 ............................................................................................ 1, 8, 29, 30

35 U.S.C. § 286 .................................................................................................... 23

35 U.S.C. § 298 .................................................................................................... 17

## I.       INTRODUCTION

After having a first-hand look at the evidence, this Court awarded treble damages and attorney's fees to Stryker for Zimmer's egregious and flagrant willful infringement of three Stryker patents.  Now, four years after the jury trial and on remand from the United States Supreme Court, there is no reason for this Court to decide anything differently.  The underlying facts supporting this Court's original awards of treble damages and attorney's fees have not changed.  The Supreme Court has loosened the standards for determining the availability of both. Indeed, the Supreme Court's review of this very case led to the abolishment of the Federal Circuit's rigid *Seagate* standard for willfulness, which had previously allowed flagrant infringers like Zimmer to avoid punitive damages by simply hiring counsel to formulate minimally reasonable, albeit unsuccessful, defenses at any point during litigation.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  The Supreme Court's decision effectively vindicated this Court's earlier decision on treble damages.

Similarly, during the pendency of the appeal of this case, the Supreme Court also rejected the Federal Circuit's *Brooks Furniture* test for exceptional case (which mirrored *Seagate*) in the context of attorney's fees.  The Supreme Court found that the Federal Circuit's test improperly required findings that a litigation be <u>both</u> objectively baseless <u>and</u> brought in subjective bad faith as a prerequisite to a fee award when subjective bad faith alone was sufficient.  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). The Supreme Court further abolished the Federal Circuit's *de novo* standard of review for determining whether a case is exceptional or whether enhanced damages are appropriate, instead holding that both 35 U.S.C. § 284 and 35 U.S.C. § 285 require an abuse of discretion standard of review.  *Halo*, 136 S. Ct. at 1934; *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014).  The standard for proving enhanced damages and exceptional case was also lowered from "clear and

convincing" to "preponderance of the evidence."  *Halo*, 136 S. Ct. at 1934; *Octane Fitness*, 134 S. Ct. at 1758.

On remand from the Supreme Court, the Federal Circuit found that "willful misconduct is sufficiently established by the jury's finding [of subjective willfulness]. The jury made its determination under the clear and convincing evidence standard, which is a higher standard than is now necessary. We therefore affirm the jury's finding of willful infringement." *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016). In making this finding, the Federal Circuit has already determined that Zimmer's conduct is sufficiently egregious to warrant enhanced damages and attorney's fees. *See infra* Sec. III. As such, all that remains is for this Court to exercise its discretion to determine the appropriate amount of enhancement under *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed Cri. 1992)[1] and to reinstate its prior finding of exceptional case and award of stipulated attorney's fees. Having been awarded treble damages and attorney's fees by this Court under stricter and more rigid standards, it is axiomatic that Stryker should similarly prevail on remand under the Supreme Court's looser and more flexible standards.

## II.    STATEMENT OF FACTS

Given the passage of time, a brief summary of the facts underlying the jury's willful infringement finding is set forth below.  Stryker and Zimmer are the principal competitors in the market for pulsed lavage devices. (Doc. 537 at PageID.17910.)  Pulsed lavage devices are used in orthopaedic surgeries to clean bone surfaces and improve visualization by delivering pulsed fluid streams to a wound surface or operating site while suctioning away excess fluid and debris. (*Id*. at PageID.17911.) Early pulsed lavage systems were bulky, loud, and difficult to maneuver

---

[1] Since the *Halo* court did not address the *Read* factors, district courts and even the Federal Circuit have continued to use the *Read* factors to guide the discretionary determination of enhanced damages under 35 U.S.C. § 284.  *See infra* Sec. III.  Stryker notes that, despite the opportunity to do so, Zimmer failed to appeal this Court's discretionary weighing of the *Read* factors in awarding treble damages in the first instance.

because they used handpieces connected to either a large tank of pressurized gas or to a wheeled base unit that carried a motor and pump plugged into a wall outlet. (*Id*.)



**Prior Art**

### A. Stryker's Invention

In the early 1990's, Stryker engaged a team of fifteen engineers to develop a solution to the prior art problems. (Doc. 358 at Page.ID7620, lns.1-18.) After two years of research and development, Stryker introduced SurgiLav Plus, a lightweight, disposable, battery-powered pulsed lavage system featuring a new drive mechanism that enabled the motor and pump assembly to be relocated from the large, bulky,



**Stryker SurgiLav Plus**

base unit into the handpiece without sacrificing power or performance. (*Id*. at PageID.7619, ln. 6-PageID.7622, ln.15.) The SurgiLav Plus system was disposable, thus eliminating the need for capital equipment that took up valuable operating room space and required sterilization. The ergonomic handpiece of Stryker's invention could be held in different ways to adapt to any procedure and could be used with a variety of interchangeable tips. Stryker's invention experienced immediate and substantial commercial success, edging out prior art capital equipment systems. (Doc. 472-3 at PageID.13798.)

Despite the success of the patented SurgiLav Plus, Stryker did not rest on its laurels. After carefully listening to customers, Stryker introduced the InterPulse, a next generation battery-powered pulsed lavage device that added a locking assembly to the handpiece to reinforce the connection between the interchangeable tip and the handpiece, preventing leakage and inadvertent tip detachment. With the popularity of Stryker's patented products, Stryker quickly became the market leader. (Doc. 484-2 at PageID.14421.)

3

### B.    Zimmer's Response to Stryker's Inventions

Stryker's market-changing inventions did not go unnoticed by its competitors.  Zimmer's internal documents recognized Stryker as the "market innovators" in pulsed lavage.  (Doc. 498-4 at PageID.15529.)  William Donizetti, a Zimmer engineer with 25 years of experience in pulsed lavage, agreed that Stryker's patented invention "pioneered the market" for pulsed lavage.  (Doc. 358 at PageID.7713, lns. 16-19.)   Third party competitor Davol, Inc. took a license under Stryker's SurgiLav Plus patents.  (Doc. 537 at PageID.17932.)

Anxious to compete in this new, disposable market created by Stryker, Zimmer introduced the Var-A-Pulse in 1996.  The Var-A-Pulse handpiece featured a heavy, goose-neck shaped housing having eight batteries arranged around a motor in the base of the housing.  By 1998, Zimmer had already prepared a business case to replace Var-A-Pulse, which Zimmer itself described as a "poorly designed product with little thought given to ergonomics or user needs" that was "rushed to the market and has been dogged by reliability and functionality issues since its release." (Doc. 498-4 at PageID.15522.)  These issues included tips falling off and poor flow rate due to inefficient pump design.  Zimmer believed that the Var-A-Pulse design was "forcing us out of the disposable market" and may "eliminate us from being a player in the lavage market in the future."  (*Id.* at PageID.15528.)

**Zimmer Var-A-Pulse**



Under tremendous market pressure but with an understaffed engineering department, Zimmer turned to a third party design firm, HM Design, to develop a competing product. HM Design "didn't know anything about what they were designing" because they had no prior experience with pulsed lavage devices. (Doc. 358 at PageID.7724, lns. 10-15, PageID.7790, lns. 7-11.) Zimmer provided samples of Stryker's patented products to HM Design and even supplied

4

HM Design with a prototype having parts "taken from a Stryker unit." (Doc. 496-4 at PageID.15346; Doc. 358 at PageID.7722, ln. 25-PageID.7724, ln. 15, PageID.7725 lns. 11-13, PageID.7731, lns. 21-24; Doc. 458-3 at PageID.12882-12883.)  Not surprisingly, Stryker's patented products were referenced throughout HM Design and Zimmer's design documents. (Doc. 496-4 at PageID.15345-15346; Doc. 492-1 at PageID.15073; Doc. 528-1 at PageID.17155; Doc. 498-3 at PageID.15516-15517.)

As this Court cogently described, Zimmer essentially "handed the independent contractor a copy of Stryker's product and said 'Make one for us.'" (Doc. 537 at PageID.17911.)  One of Zimmer's Pulsavac Plus engineers admitted at trial that Zimmer copied features claimed in the patents-in-suit.  (Doc.  358  at  PageID.7733,  lns.  10-17,  **Zimmer Pulsavac Plus** PageID.7734, lns. 8-10, PageID.7748, ln. 3- PageID.7749, ln. 19, PageID.7750, ln.13- PageID.7751, ln. 9, PageID.7721, lns. 14-17.) The result was the infringing Pulsavac Plus, which looks "largely indistinguishable" from Stryker's SurgiLav Plus.  (Doc. 247 at PageID.5099.)  Like Stryker's patented products, Zimmer's infringing Pulsavac Plus features a disposable handpiece enclosing a gear-driven electric motor and a variable speed pump powered by a remote battery pack.  Like Stryker's products, Zimmer's Pulsavac Plus also provides concurrent suction and irrigation with a trigger to control the motor's speed.  To prevent Var-A-Pulse's problem of inadvertent tip detachment, Zimmer's Pulsavac Plus uses Stryker's patented lock assembly.  (*Id.* at PageID.5105-5106.)  Zimmer even took Stryker's patented feature of attaching the electrical cord to the plastic tubing to minimize entanglements and tripping hazards.  (Doc. 358 at PageID.7733, ln.10-PageID.7734, ln. 10.)

The Pulsavac Plus took substantial market share from Stryker.  Unlike its prior pulsed

lavage systems, which peaked at a combined total of $5M in annual sales, Zimmer's annual sales of Pulsavac Plus demonstrated an astronomical 1000% increase over its prior products.  (Doc. 489-3 at PageID.14787.)  However, in 2007, Zimmer was forced to recall its Pulsavac Plus due to quality issues.  Zimmer told its customers to use the Davol Simpulse Solo during Zimmer's absence from the market, reasoning that it would be much easier to recapture business from Davol as opposed to Stryker, even though it was well aware that Stryker was selling a superior product.  (Doc. 385 at PageID.8784, ln. 9–PageID.8788, ln. 25; Doc. 459-1 at PageID.12930-12931.)  After a year off the market, Zimmer returned with its Pulsavac Plus, eventually retrieving its customers from Davol and causing further harm to Stryker.

### C.    Stryker's Patents-In-Suit

Beginning in 1995, Stryker was awarded numerous patents on the SurgiLav Plus and InterPulse, including the '329, '807, and '383 patents-in-suit.  The '329 and '383 patents, which are based on a priority date of April 19, 1993, describe the SurgiLav Plus. (Doc. 375 at PageID.8250.) The '807 patent, which is based on a priority date of August 20, 1997, describes the InterPulse.  (*Id.*)  All of the patents-in-suit were properly marked on the SurgiLav Plus and InterPulse, giving Zimmer constructive notice of these patents.  (Doc. 381 at PageID.8364-8365; Doc. 537 at PageID.17924-17928.)

In addition to constructive notice, Zimmer admitted in an interrogatory response that it was aware of Stryker's '329 and '807 patents shortly after issuance.  (Doc. 406-2 at PageID.10217.)  This knowledge was confirmed by Zimmer's 30(b)(6) deponent.  (Doc. 528-5 at PageID.17326-17327.)  Moreover, on September 25, 2000, Zimmer filed a patent application describing its Pulsavac Plus.[2]  (Doc. 528-2 at PageID.17161-17181.)  Zimmer specifically

---

[2] As discussed *infra* at Section III(I), Zimmer tried mightily to conceal its patent application during fact discovery, claiming privilege over the application without a proper basis to do so.

disclosed Stryker's '329 patent to the PTO during prosecution.  (*Id.* at PageID.17186.)  Not surprisingly, Zimmer's patent application was twice rejected by the PTO as anticipated by a Stryker InterPulse patent that shares the same disclosure as the '807 patent.  (*Id.* at PageID.17187-17197; Doc. 528-3 at PageID.17271-17280.)  Zimmer thereafter abandoned its patent application, knowing full well that its Pulsavac Plus patent application was unpatentable over Stryker's InterPulse patent. (*Id.* at PageID.17281-17282.)  Despite such knowledge, Zimmer failed to investigate the scope of Stryker's patents-in-suit and took no remedial action.

> ### D.     The District Court Litigation

After Zimmer returned Pulsavac Plus to the market, Stryker sued Zimmer for infringement of the three patents-in-suit.  Even though it knowingly copied Stryker's patented inventions, Zimmer mounted a myriad of defenses in an attempt to avoid liability and to prolong its ability to sell its Pulsavac Plus.

This Court rejected each and every one of Zimmer's claim construction arguments and subsequently granted Stryker's motion for summary judgment of literal infringement as to 20 of the 21 asserted claims.  (Doc. 247 at PageID.5098-5106; Doc. 254 at PageID.5133.)  Despite this Court's finding of infringement, Zimmer continued to manufacture and sell its infringing products.  (Doc. 537 at PageID.17964-17965.)

At trial, the jury rejected every single one of Zimmer's defenses, finding that Zimmer had willfully infringed all of Stryker's valid patents, Stryker properly marked its products with the patents-in-suit, and Stryker was entitled to an award of lost profits.  (Doc. 381 at PageID.8360-8366.)  With respect to willfulness, the jury was instructed to follow *Seagate's* rigid two-prong test for willfulness, which required Stryker to prove by clear and convincing evidence that (1) Zimmer acted despite an objectively high likelihood that its actions constituted infringement of Stryker's valid patents and (2) Zimmer knew or should have known of this risk. (Doc. 377-1 at

PageID.8297-8298.) The jury found against Zimmer on both prongs, thus establishing that Zimmer's conduct was willful. (Doc. 381 at PageID.8365-8366.) Even following the jury verdict, Zimmer stubbornly continued to manufacture and sell its adjudged infringing products.

This Court subsequently denied each of Zimmer's ten post-trial motions and granted each of Stryker's five post-trial motions, including Stryker's motions for enhanced damages and attorney's fees. In denying Zimmer's JMOL on willfulness, the Court cited evidence that Zimmer copied Stryker's patents, failed to obtain an opinion of counsel, never attempted to design around Stryker's patents or stop selling the adjudged-infringing products, and violated the standards of commerce in the medical device industry. (Doc. 537 at PageID.17932-17933.)

In analyzing enhanced damages under 35 U.S.C. § 284, this Court noted that "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." (*Id.* at PageID.17963) (*citing Read*, 970 F.2d at 826). It found that "all nine *Read* factors favor substantial enhancement of the jury's award." (*Id.* at PageID.17964-17965.) Ultimately, it noted that "[b]ecause the *Read* factors so overwhelmingly favor enhancement, the real question here is not whether enhancement is warranted, but how much enhancement is appropriate. <u>Given the one-sidedness of the case and the flagrancy and scope of Zimmer's infringement, the Court concludes that treble damages are appropriate here</u>." (*Id.* at PageID.17965 (emphasis added)); *see also Halo*, 136 S. Ct. at 1931.

This Court also found that this case is exceptional under 35 U.S.C. § 285 based on Zimmer's willful infringement. In awarding Stryker its attorney's fees, this Court noted that "[b]y pursuing this action, Zimmer has forced Stryker and this Court to expend considerable resources in the name of a case that, for the most part, was not terribly close." (Doc. 537 at

PageID.17958.) This Court further observed the following:

> Zimmer lost every argument it advanced at claim construction, then lost most of the disputed claims on summary judgment. It lost all of its remaining claims at trial. At the time the jury announced its verdict, Zimmer had not changed its product design. This is consistent with both the market and litigation strategy that Zimmer has followed for years. Zimmer chose a high-risk/high-reward strategy of competing immediately and aggressively in the pulsed lavage market and opted to worry about the potential legal consequences later. When Stryker sued, Zimmer's able counsel offered the most plausible defenses that were available to them given Zimmer's pre-litigation market conduct. <u>Ultimately, however, the trial proofs demonstrated that this was not a close case. The relative quality of the expert testimony on liability was notably favorable to Stryker</u>.

(*Id.* at PageID.17912-17913 (emphasis added).) The parties thereafter stipulated to an $8 million award of attorney's fees. (Doc. 565 at PageID.18968-18969.)

### E. The Federal Circuit Appeal

On appeal, Zimmer hired new counsel and narrowed the issues. It only appealed noninfringement for the '329 patent, obviousness for the '383 patent, anticipation and noninfringement for the '807 patent, the objective prong of willfulness, and damages as to the '383 patent. Zimmer did not appeal the jury's finding of subjective willfulness or this Court's weighing of the *Read* factors to award enhanced damages.

The Federal Circuit affirmed on liability and damages, agreeing that Zimmer had infringed all of Stryker's valid patents and upholding the jury's entire lost profits award. *See Stryker Corp. v. Zimmer, Inc.*, 782 F.3d 649, 652 (Fed. Cir. 2014), *vacated and remanded*, 136 S. Ct. 1923 (2016). However, the Federal Circuit reversed the Court's ruling on willfulness, determining *de novo* based on then-existing law that, although all of Zimmer's defenses were unsuccessful, Zimmer had presented an objectively reasonable defense on appeal as to each of the patents-in-suit. *See id.* at 660-62. The Federal Circuit therefore vacated this Court's treble damages award, exceptional case finding and attorney's fees award. *Id.* at 662.

Stryker petitioned for rehearing and rehearing en banc on the willfulness issue, urging the

Federal Circuit to reconsider its ruling in light of the Supreme Court's recently decided *Octane Fitness* and *Highmark* cases, which were decided after briefing was complete but prior to oral argument in this case.  The Federal Circuit declined.

F.     **The Supreme Court Appeal**

Stryker petitioned for certiorari to the Supreme Court, arguing that "the Federal Circuit's current willfulness framework undermines the intended deterrent effect of § 284 by immunizing infringers from enhanced damages so long as they present at least one plausible defense at the post-trial appellate stage." (Ex. 1 Pet. for Cert. at 3.)  The unfairness of a rule wherein "an adjudged infringer can copy a direct competitor's pioneering invention in bad faith but escape punitive damages simply by engaging skilled counsel to advance an unsuccessful but ultimately credible defensive argument on appeal, regardless of whether the infringer relied on or even knew about that defense prior to engaging in its infringing acts" resonated with the Supreme Court and Stryker's petition for certiorari was granted.  *Compare id. with Halo*, 136 S. Ct. at 1932, 1933.  *See also* Ex. 1 Pet. for Cert. at i (Questions Presented).

The Supreme Court vacated and remanded the Federal Circuit's decision on enhanced damages, agreeing with Stryker that the *Seagate* test for determining when a district court may increase damages is not consistent with § 284. *See Halo*, 136 S. Ct. at 1932-34.  Relying heavily on *Octane Fitness* and *Highmark*, the Supreme Court rejected the rigid *Seagate* framework and restored discretion to district courts to award enhanced damages under § 284 for egregious cases. *Id*.  The Supreme Court recognized that the Federal Circuit's threshold requirement of objective recklessness "excludes from discretionary punishment many of the most culpable offenders, such as the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Id*. at 1932; *see also id*. at 1933 ("The *Seagate* test aggravates the problem

10

by making dispositive the ability of the infringer to muster a reasonable (even though unsuccessful) defense at the infringement trial.  The existence of such a defense insulates the infringer from enhanced damages, even if he did not act on the basis of the defense or was even aware of it.").

Instead, the Supreme Court adopted a flexible framework wherein an infringer whose conduct rises to the level of egregiousness cannot escape enhanced damages by concocting a *post-hoc* reasonable defense.[3]  The Supreme Court explained that "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id*. at 1932.  In assessing the infringer's conduct, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct" as opposed to "on the strength of its attorney's ingenuity" in a post-hoc defense.  *Id*. at 1933.  In other words, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages without regard to whether his infringement was objectively reckless."  *Id*.

### G.    The Federal Circuit Remand

On remand from the Supreme Court, the Federal Circuit acknowledged that its prior decision reversing willfulness was based on its application of the now-rejected *de novo* review of *Seagate*'s now-rejected objective reasonableness prong.  The Federal Circuit thus affirmed the jury's finding of willful infringement, finding that "[o]n the record of this case, willful misconduct is sufficiently established by the jury's finding."  *Stryker*, 837 F.3d at 1279.  As it

---

[3] The Supreme Court summarized this case using this Court's description of how Zimmer had "all but instructed its design team to copy Stryker's products," and had chosen a "high-risk/high-reward strategy of competing immediately and aggressively in the pulsed lavage market" while "opt[ing] to worry about the legal consequences later."  *Halo*, 136 S. Ct. at 1931.  The Supreme Court also quoted this Court's conclusion that treble damages were appropriate "[g]iven the one-sidedness of the case and the flagrancy and scope of Zimmer's infringement."  *Id*.

did in another contemporaneous case, the Federal Circuit vacated and remanded the awards of enhanced damages and attorney's fees for consideration by the district court in a manner consistent with the Supreme Court decisions. *See Innovention Toys, LLC v. MGA Entm't, Inc.,* __ F. App'x __, 2016 WL 4151240, at *2 (Fed. Cir. Aug. 5, 2016) (non-precedential). *See also Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 577 F. App'x 995, 997 (Fed. Cir. 2014) (non-precedential) (remanding despite district court's earlier finding of exceptional case under the more demanding *Brooks Furniture* test).[4]  On remand, the *Innovention Toys* district court again awarded treble damages, finding that MGA's willful infringement was the sort of conduct that warrants enhanced damages under *Halo*, and explaining that eight of the nine *Read* factors supported enhancement.  *Innovention Toys, LLC v. MGA Entm't*, No. 07-6510, slip op. at 4-8 (E.D. La. Mar, 8, 2017) (Ex. 10).  Based on the same considerations discussed with respect to its treble damages award, the district court also again found the case exceptional and awarded attorney's fees.  *Id.* at 8-11.

## III.  AS THIS COURT PREVIOUSLY FOUND, TREBLE DAMAGES ARE WARRANTED FOR ZIMMER'S EGREGIOUS WILLFUL INFRINGEMENT

35 U.S.C. § 284 provides that district courts "may increase the damages up to three times the amount found or assessed." District courts may exercise their discretion in determining whether to award enhanced damages and in what amount based on the particular circumstances of each case, without inelastic constraints. *Halo*, 136 S. Ct. at 1933-34. Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." *Id*. at 1934.

Zimmer's deliberate copying of Stryker's patented products, coupled with its failure to investigate the scope of Stryker's patents upon knowledge and its failure to take remedial action even after this Court's grant of summary judgment of infringement and the jury's willfulness

---

[4] On remand, the *Highmark* district court again awarded attorney fees. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 03-1384, 2015 WL 6777377, at *2 (N.D. Tex. June 23, 2015).

finding, presents precisely the type of egregious and flagrant behavior for which courts have historically awarded treble damages.  *See id.* at 1928-30, 1932. Indeed, this Court noted that "[t]he problems with Zimmer's positions lie not in the quality of counsel's advocacy, but in the flagrancy of Zimmer's underlying infringement.  No advocate could rescue Zimmer from that problem."  (Doc. 537 at PageID.17958) (emphasis added.)  By affirming willfulness on remand from the Supreme Court and by specifically finding that "willful misconduct is sufficiently established by the jury's finding," the Federal Circuit has already determined that this case meets the threshold for "egregious cases typified by willful misconduct" eligible for enhanced damages under *Halo*.  *Stryker*, 837 F.3d at 1279.  All that remains is for this Court to determine the appropriate amount of enhancement.

While *Halo* rejected the Federal Circuit's rigid willfulness test, it did not disturb prior precedent that historically guided a district court's discretion in determining the amount of enhancement once 35 U.S.C. § 284 is triggered.  To the contrary, the Supreme Court indicated that, "[a]s with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount."  *Halo*, 136 S. Ct. at 1933-34 (emphasis added).

While "there is 'no precise rule or formula' for awarding damages under § 284," *id*. at 1932, in *Read Corp. v. Portec, Inc.*, the Federal Circuit enumerated a non-exhaustive list of factors that courts have historically considered in determining the amount of enhanced damages. 970 F.2d at 826-27.  These factors include: (1) "whether the infringer deliberately copied the ideas or design of another"; (2) after learning of the patent "whether the infringer…investigated [its] scope…and formed a good-faith belief that it was invalid or that it was not infringed"; (3) "the infringer's behavior as a party to the litigation"; (4) the "[d]efendant's size and financial

condition"; (5) "[c]loseness of the case"; (6) "[d]uration of defendant's misconduct"; (7) the defendant's "[r]emedial action"; (8) the "[d]efendant's motivation for harm"; and (9) "[w]hether defendant attempted to conceal its misconduct." *Id*. at 827.

Consistent with the Supreme Court's *Halo* case, the "paramount determination" under *Read* "is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Halo*, 136 S. Ct. at 1935; *Read*, 970 F.2d at 826.  Indeed, district courts post-*Halo* continue to use the *Read* factors to guide the enhanced damages analysis.  *See Innovention Toys*, slip op. at 4-8; *Dominion Resources Inc. v. Alstom Grid, Inc.*, No. 15-224, 2016 U.S. Dist. LEXIS 136728, at *60-61 (E.D. Pa. Oct. 3, 2016) (collecting cases); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No.11-761, 2016 WL 6537977, at *5 (N.D.N.Y. Nov. 3, 2016); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 14-371, 2016 U.S. Dist. LEXIS 113307, at *18-19 (E.D. Tex. Aug. 24, 2016); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-62369, 2016 U.S. Dist. LEXIS 107724, at *17-18 (S.D. Fla. July 27, 2016); *NobelBiz, Inc. v. Global Connect, L.L.C.,* No. 6:12-CV-244, slip op. at 44 (E.D. Tex. Oct. 27, 2016) (Ex. 2).  Similarly, the Federal Circuit has, post-*Halo*, affirmed enhanced damages awards under *Read. WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1325, 1342 (Fed. Cir. 2016).

In 2013, this Court analyzed the totality of the circumstances using the *Read* factors and awarded treble damages upon finding that all nine *Read* factors favor substantial enhancement. (Doc. 537 at PageID.17965.)  Tellingly, Zimmer did not appeal this Court's original analysis or conclusion under *Read*, instead attacking only the underlying objective willfulness and liability findings. (Doc. 596 at PageID.19115, 19132.)  Given that the factors remain the same, there is simply no sound reason to deviate from the Court's prior determination.  Any reweighing of the relevant factors inevitably leads to the same conclusion:  Stryker's damages should be trebled.

A.     *Read* Factor #1:  Zimmer Deliberately Copied Stryker's Patented Designs

Zimmer's deliberate copying of Stryker's pioneering inventions weighs heavily in favor of trebling damages. *See Halo*, 136 S.Ct. at 1932; *see also Innovention Toys*, slip op. at 5, n.24 (awarding treble damages where defendant copied); *Imperium*, 2016 U.S. Dist. LEXIS 113307, at *19-23 (same); *Arctic Cat*, 2016 U.S. Dist. LEXIS 107724, at *5, 18-19 (same); *NobelBiz*, slip op. at 44-46, 51 (same); *WCM Indus., Inc. v. IPS Corp.*, No. 13-2019, 2016 WL 2771790, at *5-6 (W.D. Tenn. May 12, 2016) (same); *cf. WBIP, LLC v. Kohler Co.*, No. 11-10374, 2014 WL 585854, at *7-8 (D. Mass. Feb. 12, 2014), *aff'd* 829 F.3d 1317 (Fed. Cir. 2016) (enhancing damages where defendant "developed" its product "after learning about [plaintiff's] product at a trade show" because this "supports the inference that [defendant] was at least reckless as to whether it copied"). Indeed, there can be no doubt that copying is one type of egregious behavior that warrants enhanced damages under *Halo*.  Using this very case as the backdrop, the Supreme Court expressly rejected the prior *Seagate* test in part because of the unfairness of allowing "someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—[to] nevertheless escape any comeuppance under § 284 solely on the strength of his attorney's ingenuity." 136 S.Ct. at 1933. After *Halo*, the Federal Circuit expressly recognized that "the culpable conduct of copying" is "plundering."  *WBIP*, 829 F.3d at 1340-41.

As this Court recognized when originally evaluating this factor, "multiple trial witnesses testified that Zimmer deliberately copied Stryker's patented inventions." (Doc. 537 at PageID.17964.) First, "evidence of copying came from Donizetti, who admitted that Zimmer instructed Donizetti's design team to model its design after features of Stryker's products." (Doc. 537 at PageID.17933 (citing Doc. 358 at PageID.7734, lns. 8-10 ("Q:  And you copied, I mean, you stated just a second ago you copied.  A:  Yes."); *id.* at PageID.7733, lns. 10-17 ("Q: That's what Zimmer copied from Stryker, isn't it?  A:  I guess you could say that.")); Doc. 358 at

PageID.7748, ln. 14-PageID.7751, ln.9.)  In addition, Var-A-Pulse designer Dan Olson admitted

that using gear drives such as the ones ultimately incorporated in the Pulsavac Plus "would be

probably copying somebody." (Doc. 406-1 at PageID.10201, lns. 2-5; Doc. 359 at PageID.7878,

ln. 12-PageID.7881, ln.7.)   Moreover, Zimmer's internal documents detailed the ground-

breaking nature of Stryker's patented inventions, Zimmer's desperation to be in the new

disposable, battery-powered pulsed lavage market, Zimmer's frustration at the failure of its

noninfringing Var-A-Pulse product line, and ultimately Zimmer's decision to rely on Stryker's

patented product during the development of the Pulsavac Plus.  *See supra* at Section II(B).

Tellingly, Zimmer failed to appeal the factual issue of copying.

### B.    *Read* Factor #2:  Zimmer Failed To Investigate The Scope Of The Patents

Zimmer's callous disregard for Stryker's patent rights weighs heavily in favor of treble

damages.   Zimmer indisputably relied upon Stryker's patented products (marked with then-

existing patents) during the development of its infringing Pulsavac Plus.  *See supra*.   Indeed, the

success of Stryker's patented products was the motivating factor for Zimmer's willful

infringement.   (Doc. 359 at PageID.7869, ln. 2-PageID.7872, ln. 7.)   By copying Stryker's

patented products, Zimmer took a calculated risk that additional Stryker patents could issue.  (*Id.*

at PageID.7868, ln.9-20, PageID.7871, ln. 10-PageID.7881, ln. 8; Doc. 388 at PageID.9328, ln.

25–PageID.9333, ln. 7, PageID.9374, ln. 10-PageID.9378, ln. 13.)   And additional patents did

issue, including the three patents-in-suit.

Zimmer admitted in an interrogatory response that it became aware of the '329 and '807

patents shortly after they issued in 2000 and 2001, respectively, and Zimmer's 30(b)(6) witness

confirmed such knowledge.  (Doc. 406-2 at PageID.10217; Doc. 528-5 at PageID.17326-17327.)

Since the '383 patent is a continuation of the '329 patent and was marked on substantially all of

Stryker's patented products, Zimmer should have known about that patent too.  (Doc. 359 at

PageID.7867-7868; Doc. 381 at PageID.8364-8365.)   Yet, as this Court observed, "Zimmer presented no evidence that it investigated the scope of Stryker's patents to form a good faith belief about invalidity or infringement, militating in favor of enhancement."[5]  (Doc. 537 at PageID.17964; Doc. 387 at PageID.9157, ln. 14-PageID.9158, ln. 2.)  Instead, Zimmer simply enjoyed its skyrocketing sales at Stryker's expense.   (Doc. 359 at PageID.7867, ln. 17-PageID.7868, ln. 14.)  Stryker's expert, Neil Sheehan, testified that Zimmer's behavior was not in keeping with the standards of commerce in the medical device industry.  (*Id.* at PageID.7867, ln. 17-PageID.7868, ln. 14, PageID.7881, ln. 9-PageID.7882, ln.5; Doc. 537 at PageID.17933.) Zimmer's failure to investigate the scope of the patents-in-suit despite knowing of those patents weighs strongly in favor of a substantial enhancement.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858-59 (Fed. Cir. 2010) (affirming enhancement where defendant was aware of patents and failed to form a good faith belief of non-infringement); *Innovention Toys*, slip op. at 7-8 (trebling damages where defendant failed to produce evidence at trial with respect to any investigation of the scope of Innovention's patent); *NobelBiz*, slip op. at 46, 51;  *Imperium*, 2016 U.S. Dist. LEXIS 113307, at *20-21 (same); *WCM*, 2016 WL 2771790, at *5 (same); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Group*, No. 10-187, 2016 WL 2772123, at *1, 4 (D. Neb. May 11, 2016) (failure to check for and investigate later-issued patents after deliberate copying warrants enhancement).

### C.     *Read* Factor #3:  Zimmer Engaged In Vexatious Litigation Conduct

Zimmer's behavior as a party to this litigation weighs in favor of a significant enhancement. First and foremost, Zimmer presented numerous unreasonable defenses that Stryker and the Court had to expend considerable resources to address.  For example:

---

[5] The present case predates 35 U.S.C. § 298, a statute precluding a patentee's reliance on an infringer's failure to seek advice of counsel to prove up willful infringement and inducement. Section 298 is applicable only to civil actions commenced on or after January 14, 2013.

- **Zimmer's claim construction positions were unreasonable.**  This Court rejected each and every one of Zimmer's claim construction arguments, characterizing Zimmer's positions as "unduly limit[ed]," "without merit," "unduly restrictive" and improperly "excluding the preferred embodiment."  (Doc. 106 at PageID.1700, 1708, 1718.)

- **Zimmer's noninfringement defenses were meritless in view of the evidence.** Rather than conceding infringement after having lost on all of its claim construction arguments, Zimmer persisted in offering noninfringement arguments so weak that summary judgment of infringement was granted on 20 of 21 claims.  In granting summary judgment of infringement, this Court described Zimmer's purported defenses as "impossibly cramped" and "unreasonable." (Doc. 247 at PageID.5103-1505.) With respect to the remaining claim of the '329 patent, Zimmer's technical expert, Mr. Milroy, expressed at least three mutually exclusive opinions regarding what portion of the Pulsavac Plus was the "handle," and took a noninfringement position at trial that directly contradicted one of his prior declarations. (Doc. 411-2 at PageID.10645; Doc. 411-3 at PageID.10649-10650; Doc. 386 at PageID.9081, ln. 25-PageID.9085, ln. 24, PageID.8933, ln. 14-PageID.8934, ln. 3; Doc. 79 at PageID.1046-1047.) Ultimately, admissions in Zimmer's own patent application and the videotaped deposition testimony of Zimmer's own Pulsavac Plus engineers confirmed the unreasonableness of Zimmer's sole remaining noninfringement defense. (Doc. 528-2 at PageID.17162-17169; PageID.17177-17178; Doc. 491 at PageID.14880-14884; Doc. 458-5 at PageID.12907, ln. 13-PageID.12908, ln. 24; Doc. 458-2 at PageID.12875, ln. 3-PageID.12876, ln. 1.) The jury and the Court rejected Zimmer's noninfringement defense, but only after Stryker expended significant effort and resources.  (Doc. 537 at PageID.17922-17924; Doc. 381 at PageID.8360-8366.)

- **Zimmer's invalidity defenses were unreasonable in view of the evidence.** Zimmer relied on Mr. Milroy for its obviousness defenses, even though it was plain that he did not understand how to perform an obviousness analysis.  (Doc. 386 at PageID. 9092, ln. 17-PageID.9093, ln.17.)   Despite having never performed an obviousness analysis before, Mr. Milroy submitted more than 1300 pages of invalidity expert reports addressing 25 prior art references, most of which had already been considered and rejected by the Patent Office and others of which pertained to unrelated technologies such as ride-on toy trucks and large animal speculum. (Ex. 3, excerpts from Milroy expert reports.)  Stryker and its expert were forced to expend considerable time and resources to address every one of Zimmer's invalidity defenses, no matter how trite or baseless.  It was not until one or two nights before Mr. Milroy testified at trial that Zimmer finally revealed that it would only be relying on one combination of references each for the '329 patent and '383 patent, and three references for the '807 patent.  (Ex. 4, 1/28/13 letter from Zimmer; Ex. 5, 1/29/13 letter from Zimmer.)

At trial, Zimmer's own engineer agreed that Stryker's inventions "pioneered the market for pulsed lavage."  Yet Mr. Milroy persisted in testifying that Stryker's patents were obvious, even while simultaneously admitting that pioneering inventions are "a major leap in technology," and are "never obvious," and even in the face of "considerable evidence that Stryker's patents were neither anticipated nor obvious."  (Doc. 358 at PageID.7713, lns. 13-19; Doc. 386 at PageID.9075, lns. 2-19; Doc. 537 at PageID.17932.)  Not surprisingly, Mr. Milroy's obviousness positions were rejected by the jury, this Court, and the Federal Circuit.

- **Zimmer's principal lost profits defense was baseless.**  Throughout this case, Zimmer wasted this Court's and Stryker's time by concocting numerous litigation-inspired noninfringing alternatives to defend against Stryker's claim for lost profits. The jury necessarily

rejected all of these "alternatives" in awarding Stryker lost profits.   Zimmer's first list of so-called "theoretical" alternatives was prepared by a Zimmer engineer at the request of Zimmer's counsel following a three hour brain storming meeting.   (Doc. 385 at PageID.8808, lns. 5-12.)  Zimmer provided no operational details of the hypothetical designs and no evidence as to how the proposed designs would have been available, acceptable, or non-infringing.   Indeed, the testimony of Zimmer's Rule 30(b)(6) marketing witness confirmed that the purported design changes were not, in fact, acceptable to customers.  (Doc. 472-5 at PageID.13835-13839; Doc. 413-2 at PageID.10790-10808).  Undeterred, Zimmer introduced an additional purportedly acceptable non-infringing alternative as the case advanced towards trial. (Doc. 473-1 at PageID.13843-13844.) Of course, this proposed change suffered from the same lack of specifics as the prior designs. (*Id*.; Doc. 384 at PageID.8542, ln.10-PageID.8547, ln.10.)  After post-trial briefing was completed, Zimmer proposed—and this time, implemented—yet another purported alternative, apparently in the hopes of skirting an injunction.   (Doc. 535 at PageID.17645-17674.)  While that alternative ultimately was short-lived, Stryker and the Court were still forced to address yet another improper Zimmer filing.  (Doc. 537 at PageID.17912, n.1.)

In addition to pursuing numerous unreasonable defenses, Zimmer engaged in vexatious discovery and litigation tactics throughout this case.[6]  For example, Zimmer identified 1,100 exhibits for trial, marking virtually every deposition exhibit and nearly every exhibit to every pleading and expert report ever filed, without regard to relevance or redundancy.   Zimmer's tactic forced Stryker to have to review and provide objections to each and every one of the nearly 1,100 exhibits on the eve of trial even though Zimmer ultimately introduced only 58 exhibits.

---

[6] Zimmer's egregious litigation behavior also includes its concealment of its Pulsavac Plus patent application, discussed at length at Section III(I), in the discussion of *Read* Factor #9.  This Court previously agreed that "Zimmer needlessly delayed producing requested information concerning its application for a patent for the Pulsavac Plus."  (Doc. 537 at PageID.17964.)

This is reminiscent of Zimmer's similarly vexatious tactic of waiting until the middle of trial to narrow its voluminous invalidity defenses. *See supra.* Zimmer's strategy of raising as many issues as possible and waiting until the eleventh hour to inform Stryker of the few actual issues it would present wasted Stryker's and the Court's time. *See e.g., St.-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 752 n.9 (N.D. Ohio 2010) ("[A] pattern of raising and discarding claims or defenses may constitute a *strategy* of vexatious activity.")

When considered in its entirety, Zimmer's conduct weighs in favor of enhanced damages. *See St.-Gobain*, 707 F. Supp. 2d at 752-53 (filing baseless motions, providing unqualified expert opinions, raising legal issues at trial which were not jury issues, and re-arguing issues already decided by the court was misconduct weighing in favor of enhancement); *Innovention Toys*, slip op. at 8 (MGA filed seven unsuccessful summary judgment motions and engaged in misconduct that required the Court and Innoventions to devote significant resources at trial); *ReedHycalog UK Ltd. v. Diamond Innovations, Inc.*, No. 08-325, 2010 U.S. Dist. LEXIS 83011 at *15-23, 29 (E.D. Tex. Aug. 12, 2010) (concealment of a document, baseless privilege claims, and unnecessary motion practice warranted enhancement); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, No. 04-5172, 2009 WL 512156, at *4-8 (D.N.J. Feb. 27, 2009) (frivolous arguments, unqualified expert testimony, failure to provide discovery, meritless motions, and improper statements by counsel favored enhancement); *Exmark*, 2016 WL 2772123, at *4 ("strained claim constructions" and arguing "meaningless distinctions in an attempt to avoid infringement" favored enhancement); *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1297 (S.D. Fla. 2010) (enhancing damages where defendant's tactics provoked numerous disputes between the parties, delayed resolution of claims, and resulted in unnecessary motions practice).

### D. *Read* Factor #4: Zimmer's Size Weighs In Favor Of Treble Damages

In order to sufficiently punish and deter an infringer with substantial resources and in

strong financial condition, a higher enhancement is necessary.  *See PPC*, 2016 WL 6537977, at

*7.  Consistent with this principle, this Court previously found that "Zimmer is a multi-billion

dollar company with reported annual profits in excess of three-quarters-of-a-billion dollars.  A

$70 million verdict sounds large in the abstract, but in context, it may not be enough, without

enhancement to deter infringing conduct."  (Doc. 537 at PageID.17964.)

Since this Court's original conclusion, Zimmer's financial resources have grown, making

treble damages even more appropriate.  On June 24, 2015, Zimmer completed its acquisition of

Biomet and is now worth in excess of $20 billion (up from $13 billion in 2013).  Zimmer's

yearly reported earnings since 2013 have increased by nearly $3 billion, to approximately $7.684

billion in 2016.  (Ex.6, Zimmer Press Release; Doc. 406 at PageID.10184.)  And, in its 2015

annual report Zimmer still reported having $1.459 billion in cash and cash equivalents on hand

(up from $884 million in 2012).  (Ex. 7, 2015 Annual Rep. at 39; Doc. 406 at PageID.10184.)  In

view of Zimmer's ever-improving financial condition, treble damages are warranted to ensure

that Zimmer is punished for its deliberate disregard of Stryker's patent rights and sufficiently

deterred from engaging in such behavior in the future.  *See Metabolite Labs., Inc. v. Lab. Corp.*

*of Am. Holdings*, 370 F.3d 1354, 1371 (Fed. Cir. 2004) (affirming enhancement where infringer

was "a large company with extensive financial means").

### E.    *Read* Factor #5: This Was Not A Close Case

As this Court previously noted, this case "was not terribly close" and "the trial proofs

demonstrated that this was not a close case." (Doc. 537 at PageID.17912, 17958.) This Court

observed that "Zimmer lost every argument it advanced at claim construction, then lost most of

the disputed claims on summary judgment.  It lost all of its remaining claims at trial." (*Id.* at

PageID.17912.)  The Federal Circuit affirmed this Court's summary judgment rulings and the

jury's liability, damages, and even willfulness findings for all three patents-in-suit. *Stryker*, 837

F.3d at 1279. Where a party loses on each and every issue—largely on summary judgment—on multiple patents, the case is not close and treble damages are warranted. *See PPC*, 2016 WL 6537977, at *7 (case not close where multiple issues were resolved on summary judgment and the remaining issues at trial were "not particularly close"); *CleanCut, LLC v. Rug Dr., Inc.*, No. 08-836, 2013 U.S. Dist. LEXIS 16151, at *10 (D. Utah Feb. 4, 2013) (case not close where the jury "returned a verdict that was resoundingly in favor of [plaintiff] on all points").

Moreover, under *Halo*, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." 136 S. Ct. at 1933. Under that standard, Zimmer possessed no pre-suit defenses that made this a close case because, despite copying Stryker's patented products and admitting to having knowledge of two of three patents-in-suit shortly after issuance, Zimmer presented no evidence that it formed any belief, good faith or otherwise, that its products did not infringe or that Stryker's patents were invalid. (Doc. 537 at PageID.17933); *See Arctic Cat*, 2016 U.S. Dist. LEXIS 107724, at *25.

## F. *Read* Factor #6: Zimmer's More Than Decade-Long Infringement Warrants Enhancement

The Court previously found that "Zimmer's infringement spans more than a decade, from 2000 all the way through the present—a considerable amount of time." (Doc. 537 at PageID.17964-17965.)[7] Indeed, Zimmer persisted in its misconduct throughout this litigation, continuing to sell its infringing products after the Court granted summary judgment of infringement on two patents-in-suit, and after the jury returned a verdict that all the asserted claims of the three patents-in-suit were valid and willfully infringed. Zimmer even asked the Court to stay the permanent injunction so Zimmer could continue to infringe during the appeal. (Doc. 495 at PageID.15162.) As the Court originally found, this decade-plus of infringement

---

[7] Under 35 U.S.C. § 286, Stryker recovered damages beginning only on December 10, 2004, even though Zimmer's infringement began on February 8, 2000, when the '329 patent issued.

23

amply supports trebled damages. *i4i*, 598 F.3d at 858-59 (affirming treble damages where defendant infringed for more than five years); *Metabolite*, 370 F.3d at 1371 (affirming enhancement for multi-year infringement); *Arctic Cat*, 2016 U.S. Dist. LEXIS 107724, at *5, 25-26 (trebling damages for multi-year infringement).

### G. *Read* Factor #7: Zimmer Failed To Take Remedial Action

As this Court previously recognized, "at no point during its 12-plus years of infringement did Zimmer take any remedial action to stop infringement or mitigate damages, including during the two-plus years covered by this litigation." (Doc. 537 at PageID.17965.) Zimmer's failure to change its product—even after a willful infringement verdict on three patents—was "consistent with both the market and litigation strategy that Zimmer had followed for years. Zimmer chose a high-risk/high-reward strategy of competing immediately and aggressively in the pulsed lavage market and opted to worry about the potential legal consequences later." (*Id.* at PageID.17912.) Zimmer's failure to take any remedial action, especially while simultaneously arguing about the alleged availability of noninfringing redesigns, weighs heavily in favor of treble damages. *See Metabolite*, 370 F.3d at 1371 (no "attempts to remedy the infringement" supports enhancement); *PACT XXP Techs., AG v. Xilinx, Inc.*, No. 07-563, 2013 WL 4801885, at *2 (E.D. Tex. Aug. 30, 2013) (no remedial action "before suit, during suit, or even after the jury's verdict" favors enhancement); *Arctic Cat*, 2016 U.S. Dist. LEXIS 107724, at *26-27 (trebling damages where defendant "did not voluntarily cease" infringing or implement a non-infringing alternative"); *Innovention Toys*, slip op. at 8 (trebling damages where MGA did not voluntarily cease infringing until an injunction was entered, and MGA took no affirmative remedial measures).

### H. *Read* Factor #8: Zimmer Was Motivated To Harm Stryker

Zimmer's actions in this case go well beyond the boundaries of ordinary lawful competition. Its actions instead illustrate a consistent desire to harm its only true competitor in

this space—Stryker.  *Read* factor #8, therefore, also supports trebling the damages award.

As Zimmer admitted, Stryker's innovations pioneered the pulsed lavage market.  (Doc. 358 at PageID.7713, lns. 13-19.)  While Zimmer initially tried to lawfully compete with a non-infringing product, that product was a failure and almost forced Zimmer out of the market.  (Doc. 498-4 at PageID.15520-15558.)  Instead of developing a new non-infringing product, Zimmer hired HM Design to copy Stryker's patented product.  (Doc. 537 at PageID.17911; *supra* Sec. II(B).)  Indeed, HM Design's stated mission was to "recaptur[e] the lost sales, product reliability, sales force confidence, and performance leadership from competitors like Stryker."  (Doc. 528-1 at PageID.17143.)  Copying its direct competitor's patented product to regain market share is strong evidence of Zimmer's motivation to harm Stryker.  *See PPC*, 2016 WL 6537977, at *8 (motivation to harm where "customers complained" about defendant's product so defendant redesigned its product to be infringing); *Dominion*, 2016 U.S. Dist. LEXIS 136728, at *67-68 (motivation to harm where defendant incorporated plaintiff's technology into its products to "regain" the market lead).

Moreover, even when Zimmer was <u>not</u> selling pulsed lavage devices, it still actively diverted customers away from Stryker.  As discussed *supra*, during the Pulsavac Plus recall, Zimmer recommended that its customers use the inferior Davol device—a device Zimmer did not consider to be "a player" in the orthopedic field because it was used "pretty much in the physical therapy field."  (Doc. 385 at PageID.8784, ln.9-PageID.8788, ln.25.)  Zimmer made that recommendation to more easily regain market share upon reentering the market.  (*Id.* at PageID.8787, ln. 19-PageID.8788, ln. 25.)  As Mr. Donizetti candidly admitted, "it is about the money for Zimmer."  (Doc. 358 at PageID.7716, lns. 4-5.) These actions further illustrate that Zimmer sought to harm Stryker's hard-earned market position.  *See PPC*, 2016 WL 6537977, at

*8 (motivation to harm where defendant "divert[ed] business away from [plaintiff]"); *Parker-Hannifin Corp. v. Wix Filtration Corp.*, No. 07-1374, 2011 WL 976559, at *17 (N.D. Ohio Mar. 17, 2011) (motivation to harm where parties "are fierce competitors"); *Innovention Toys*, slip op. at 6 (motivation to harm where parties were direct business competitors).  Indeed, this Court previously and correctly concluded that "because Zimmer and Stryker are the only major competitors in the orthopedic pulse lavage device market, [] Zimmer's infringement of Stryker's patents can only have been motivated by a desire to harm Stryker by depriving it of market share."  (Doc. 537 at PageID.17965.)

## I.    *Read* Factor #9:  Zimmer Attempted to Conceal its Misconduct

In its previous analysis, this Court agreed that Zimmer "attempt[ed] to prevent Stryker from discovering certain aspects of its infringement in the run up to trial."  (*Id.*)  Zimmer's misleading concealment of the details regarding its Pulsavac Plus patent application weighs strongly in favor of substantial enhancement.  As discussed above, Zimmer filed a patent application on its infringing Pulsavac Plus on September 25, 2000 naming Bill Donizetti and two others as named inventors. (Doc. 528-2 at PageID.17162-17180.)  Zimmer's patent application contained multiple pre-litigation admissions regarding the structure and use of the Pulsavac Plus that proved that many of Zimmer's noninfringement defenses were baseless.  For example, Zimmer's admissions in its patent application contradicted its noninfringement arguments that the Pulsavac Plus motor is not located within the handle and does not include a trigger. (*See* Doc. 358 at PageID.7745, lns. 11-19, PageID.7746, lns.9-15; Doc. 528-2 at PageID.17163-17178.)

During discovery, Zimmer produced a copy of the Pulsavac Plus patent application with no Patent Office markings, file history, or other indications that it had been filed.  (Ex. 8 Dep. Ex. 64.)  On December 27, 2011, Stryker requested that Zimmer produce a complete file history for that particular unpublished patent application, which was not publicly available and not

26

otherwise accessible by Stryker. (Doc. 406-3 at PageID.10221.)  Stryker's request fell on deaf ears.  On February 28, 2012, Stryker deposed Bill Donizetti and asked him pointed questions about the patent application.  (Doc. 408-1 at PageID.10259-10263.)  Zimmer's counsel stated on the record that he would have to "investigate" whether the document was privileged and then instructed Mr. Donizetti not to answer several of Stryker's questions. (*Id.* at PageID.10260-10261.)  The next day, apparently after "investigating," Zimmer requested that the patent application be returned or destroyed, claiming that the patent application was privileged.  (Doc. 406-4 at PageID.10225.)  As it turns out, Zimmer did not conduct a proper investigation because months later, after Stryker had already deposed two of the named inventors, Zimmer announced it was no longer claiming privilege over the patent application. (Ex. 9, 4/10/12 Letter to Stryker.)

Over the course of six months, Stryker sent Zimmer's counsel more than a dozen letters regarding the patent application.  (*See, e.g.,* Doc. 407-2 at PageID.10239-10241; Doc. 407-3 at PageID.10243-10246; Doc. 407-4 at PageID.10248-10250.)  Stryker even served a narrowly-tailored interrogatory specifically identifying the patent application by Bates number, asking whether it had been filed and whether Zimmer had produced a complete file history.  (Doc. 407-5 at PageId.10252-10254.)  Instead of providing a straightforward response, Zimmer indicated that the burden of determining the information was substantially the same for Stryker and Zimmer.  (*Id.*)  As patent practitioners, Zimmer's counsel knew full well that Stryker had no way of determining whether the stand-alone patent application—which bore no Patent Office markings and which had never been published—had ever been filed.  Eight days after the close of discovery and six months after Stryker first requested a copy of the prosecution history, Zimmer finally produced the prosecution history and admitted that the patent application had indeed been filed.  The belatedly-produced prosecution history confirmed Zimmer's specific

27

knowledge of both Stryker's '329 patent and the parent of the '807 patent.  Moreover, the patent application itself figured prominently in Stryker's motion for summary judgment of infringement, as well as Stryker's case-in-chief at trial to prove infringement. (Doc. 157 at PageID.2424-2427; Doc. 358 at PageID.7741, ln. 12- PageID.7746, ln. 22.)[8]

Zimmer's misleading and improper concealment of key evidence—the Pulsavac Plus patent application—strongly weighs in favor of enhancement.  *ReedHycalog*, 2010 U.S. Dist. LEXIS 83011, at *16-17 (failure to produce an important document and baselessly claiming privilege was misconduct favoring enhancement); *Joyal*, 2009 WL 512156, *5 (failure to provide discovery in response to discovery requests favors enhancement); *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07-1200, 2010 WL 114005, at *3 (S.D. Cal. Jan. 6, 2010) (requesting non-publication of patent application constituted concealment favoring enhancement).

**J.  The *Read* Factors Weigh Heavily In Favor of Treble Damages**

As this Court originally found, "all nine Read factors favor substantial enhancement of the jury's award," and "the *Read* factors [] overwhelmingly favor enhancement."  (Doc. 537 at PageID.17964-17965.)  This Court should again conclude that treble damages are appropriate "[g]iven the one-sidedness of the case and the flagrancy and scope of Zimmer's infringement." *Id.*  There is simply no reason for this Court to deviate from its prior decision.[9]

---

[8] Nevertheless, Zimmer filed a meritless motion *in limine* arguing that the patent application was "irrelevant."  (*See* Doc. 285 at PageID.5801-5803; Doc. 313 at PageID.5981-5989.)

[9] On remand from the Supreme Court, Zimmer requested a rehearing so that the Federal Circuit could direct this Court to (1) allow Zimmer to supplement the record on subjective intent, despite Zimmer's failure to appeal that issue; and (2) prorate any enhancement because, according to Zimmer, it could not be considered a "wanton and malicious pirate" during the period in which it relied on its so-called reasonable defenses.  *Stryker Corp. v. Zimmer, Inc.*, No. 13-1668, Doc. 117 (Fed. Cir. Dec. 2, 2016).  In response, Stryker noted that proration was inapplicable in light of Zimmer's "high-risk/high-reward" strategy, wherein Zimmer continued to infringe regardless of any legal consequences, including a judgment of infringement and a jury verdict. *Id.* at Doc. 120. Not surprisingly, the Federal Circuit denied Zimmer's request.  *Id.* at Doc. 122.

## IV.    AS THIS COURT PREVIOUSLY FOUND, THIS CASE IS EXCEPTIONAL AND AN ATTORNEY'S FEE AWARD IS APPROPRIATE

For the same reasons as described above with respect to enhanced damages, this case is exceptional and Stryker should be awarded its attorney's fees in the amount previously stipulated by the parties.   35 U.S.C. § 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   The Supreme Court recently clarified that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case is litigated," and that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."   *Octane Fitness*, 134 S. Ct. at 1756, 1757 (emphasis added).   "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."   *Id.* at 1756.

Zimmer's subjective willfulness, as found by the jury and affirmed by the Federal Circuit, satisfies the "subjective bad faith" element and is sufficient to find this case exceptional. *Halo*, 136 S. Ct. at 1932-33 (citing *Octane Fitness*, 134 S. Ct. at 1757) (equating "subjective bad faith" with "subjective willfulness."); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) ("[O]ur cases uniformly indicate that… willfulness…may be a sufficient basis in a particular case for finding the case 'exceptional'…."); *Rawcar Group, LLC v. Grace Med., Inc.*, No. 13-1105, 2014 WL 12577590 at *8 (S.D. Cal. Dec. 16, 2014) ("The reasoning of *Golight* that a finding of willfulness may merit an award of sanctions remains sound after *Octane*.  Accordingly, this case is exceptional on that basis alone.") (emphasis added); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 13-366, 2016 WL 3346084 at *22 (E.D. Tex. June 16, 2016) (willful infringement "alone is a 'compelling' indication" that a case is

exceptional); *Comaper Corp. v. Antec, Inc.*, No. 05-1103, 2014 WL 12613394, at *1 n.1 (E.D. Pa. June 11, 2014) ("[T]he jury's finding of willful infringement is in itself sufficient to render this case exceptional under §285.")  Zimmer's litigation misconduct, as discussed in *Read* factors 3 and 9, separately supports an exceptional case finding. *Innovention Toys*, slip op. at 10-11.

As this Court previously recognized, an award of fees is necessary here "to prevent the waste of judicial resources that comes from willful infringement and the oftentimes unnecessary litigation it engenders." (Doc. 537 at PageID.17958.)  As discussed in Section II, Zimmer forced Stryker and this Court to expend considerable resources to defend a lawsuit that was "not terribly close." *See Georgetown Rail*, 2016 WL 3346084 at *24 (awarding fees where willful infringer's conduct needlessly drew out resolution of the issues).  Just as those facts support trebling damages, they also demonstrate that this case is exceptional.  (Doc. 537 at PageID.17958.)

In 2013, this Court found this case to be exceptional based solely on Zimmer's willfulness (found under the rigorous *Seagate* test) and awarded Stryker its attorney's fees. (*Id.* at PageID.17956-17958.)  Four years later, after the Supreme Court's rejection of the Federal Circuit's overly rigid *Seagate* test, Zimmer's willful infringement is still a sufficient basis, with or without Zimmer's litigation misconduct, to award fees in this case.  *See e.g.*, *Rawcar Group*, 2014 WL 12577590 at *8.  Indeed, under a less rigorous standard than that originally applied by this Court, there is simply no good reason that the result should differ on remand.

## V.    CONCLUSION

For the above reasons, Stryker respectfully requests that this Court award treble damages under 35 U.S.C. § 284, declare this case exceptional under 35 U.S.C. § 285, and order Zimmer to pay Stryker's attorney and expert fees in the amount previously stipulated by the parties.  To the extent such fees are awarded, this Court previously ordered that Zimmer must pay prejudgment interest calculated at a rate of 3.83%, compounded monthly, and post-judgment interest.

Dated:  March 10, 2017                     Respectfully submitted,


                                            /s/ Sharon A. Hwang
                                           David J. Gass (34582)
                                           D. Andrew Portinga (P55804)
                                           **MILLER JOHNSON**
                                           45 Ottawa Ave, SW
                                           Suite 1100
                                           Grand Rapids, Michigan 49503-2250
                                           (616) 831-1717


                                           Sharon A. Hwang
                                           Deborah A. Laughton
                                           Stephanie F. Samz
                                           McANDREWS, HELD & MALLOY, LTD.
                                           500 West Madison Street, Suite 3400
                                           Chicago, Illinois 60661
                                           (312) 775-8000

                                           *Attorneys for Plaintiffs,*
                                           Stryker Corporation,
                                           Stryker Puerto Rico, Ltd. and
                                           Stryker Sales Corporation